## PHISCATOR *v.* RICE.

MALICIOUS PROSECUTION—ADVICE OF COUNSEL—EVIDENCE—SUF-
FICIENCY.
> In an action for malicious prosecution of a complaint for
> larceny, evidence examined, and *held,* to present a question
> for the jury whether defendant made a full and fair state-
> ment of the case to counsel before making the complaint.

Error to Berrien; Coolidge, J. Submitted February
13, 1907. (Docket No. 133.) Decided March 5, 1907.

Case by George Phiscator against Dwight C. Rice for
malicious prosecution. There was judgment for defend-
ant on a verdict directed by the court, and plaintiff brings
error. Reversed.

*James O'Hara,* for appellant.

*N. A. Hamilton* (*Gore & Harvey,* of counsel), for
appellee.

BLAIR, J. This is an action for malicious prosecution
of criminal proceedings based upon a charge of obtaining
money under false pretenses. Criminal proceedings were
instituted by the defendant, Rice, against the plaintiff,
Phiscator, charging him, in substance, with having ob-
tained $63.73 of the defendant's money by means of the
false representation and pretense that certain bags of
clover seed delivered to the defendant, Rice, on December
15, 1904, were of the same quality as a sample of clover
seed theretofore exhibited to the defendant, Rice, by the
said plaintiff, Phiscator. The criminal proceedings hav-
ing terminated by the entry of a nolle prosequi in the
circuit court, and Phiscator having been discharged, he,
thereupon, brought this suit. At the close of the proofs
of the parties, the circuit judge directed a verdict in favor
of the defendant upon the ground:

"That the defendant made a frank, fair, and full statement of all the facts within his knowledge to the prosecuting attorney and to Mr. Hamilton, his private attorney, and that he relied on their advice. Their advice was that a crime had been committed, upon his statement. Now, under the laws of this State, in fact, of all the States, where defendant makes or any person makes a fair and full statement of the facts which he knows to the prosecuting attorney and the prosecuting attorney advises him that there is a criminal cause, and the man relies in good faith upon the statement of the prosecuting attorney, then, gentlemen, he is not liable in an action for malicious prosecution. And in this case, I do not find any evidence to contradict the statement of Mr. Rice upon this question."

Plaintiff denying that a frank, fair, and full statement was made to the prosecuting attorney and Mr. Hamilton, and denying that there was no evidence to contradict the statement of Mr. Rice, but insisting that there was such testimony and that the case should have been submitted to the jury, has brought the case to this court for review upon writ of error.

The principal question for determination in the case is whether the facts were so undisputed, as held by the judge who tried the case, as to make the question of reliance in good faith upon the advice of counsel a matter of law for the court instead of a question of fact for the jury. In determining this question, it is only necessary to consider whether the testimony compels the conclusion that the defendant Rice shipped to the firm of Dickinson & Company, in Chicago, and received back again from that firm, the same clover seed which he had received from the plaintiff, Phiscator. If the evidence is undisputed that defendant shipped the identical clover seed which he received from plaintiff, and that the same seed was returned to him, then we are of the opinion that the instruction of the trial judge was correct. If, however, there was evidence from which a jury would be authorized to find that the bags of clover seed produced in court by defendant contained different seed from that received from plaintiff,

then, manifestly, the question should have been submitted to the jury.

The defendant gave evidence tending to show that some days prior to the delivery of the seed, the plaintiff, Phiscator, came to the store of defendant and his brother and exhibited a sample of clover seed, which, upon examination, proved to be clear, good seed with no foreign substances or foul seed contained in it; that after examining the seed, defendant agreed with plaintiff to purchase his clover seed, if like the sample, for the price of $10.50 per 100 pounds; that later on (and as shown by a witness for the plaintiff), on the 15th of December, the plaintiff brought four bags of clover seed to defendant's store in pretended compliance with the agreement; that defendant untied the bags, examined the seed at the top of three of the bags, and later on, but prior to shipment, examined the seed at the top of the fourth bag and found such seed at the top of each of the four bags to be good, merchantable seed; that thereupon defendant paid to plaintiff the full price agreed upon for the seed; that, later on, and some time in January, 1905, defendant shipped the seed to Albert Dickinson & Company, of Chicago, with whom they were in the habit of dealing; that on January 13, defendant received a letter from Dickinson & Company as follows:

"Shipment 4 bags clover in car No. 7,104 has arrived, but seed contains such a quantity of buckthorn that thought best to make bid before sending returns. Can use the four bags at $5 per 100, track Chicago. Kindly advise promptly, etc."

In answer to this letter, defendant sent the following:

"Please return four sacks clover seed. We bought this for good quality and paid $10.50 for it. We can use this lot to retail out here and not lose any money."

In accordance with defendant's direction, the four bags were returned and the seed examined by defendant, who testified that it was filled with buckthorn; that there was

a great deal of sand in it; that the top of each sack was substantially like the sample; that there was more buckthorn in the middle and that from one-quarter to one-third of the seed in the bottom of the sacks was buckthorn; that defendant stated these facts to the prosecuting attorney and Mr. Hamilton, assuring them that the bags returned containing the foul seed were the identical bags and seed which he had received from plaintiff and shipped to Dickinson & Company, of Chicago. These bags, numbered 1, 2, 3, and 4, were tested with a clover seed tester by a witness for defendant in the presence of the jury.

"In bag No. 1 he found near the top a fair, merchantable quality, containing a few grains of buckthorn only. Near the bottom of No. 1, there was a large percentage of buckthorn. About the center of No. 1, the quality was about midway between the other two samples. It contains a large quantity of buckthorn. In bag No. 2 the top test showed the seed to be about the same as the top test in No. 1. The bottom test showed more buckthorn than a similar test of No. 1, and was, as stated by witness, 'lousy with buckthorn.' In bag No. 3, from which about 40 pounds had leaked out, the test showed the top to be similar to middle of bag No. 1; the test at the bottom showed that it was a shade better than at the top. In bag No. 4, the test showed buckthorn at the top, also at the bottom. The bottom was just a shade cleaner than the top. There was a large quantity at the top, and all through it."

The plaintiff gave evidence tending to show: That the seed which he delivered to defendant was threshed by one Christian Fletcher and his son, Will Fletcher. That he took the bags as they came from the machine, and stored them at his house just as received.

"I neither put any seed into any of the bags nor took any out of any of the bags. They were in the same condition when taken upstairs by me as when they left the machine. I did not handle the contents of the bags at all."

That he delivered these bags of seed in the same condition as when received from the threshers, excepting the small sample which he had taken from one of the bags to

exhibit to defendant. That there were six of these bags, of which he brought down five bags, and delivered them to defendant. That there was only one full bag of the five delivered, the others varied in fullness—one being only two-thirds or three-quarters full. That one of the five sacks was emptied into a bag furnished by defendant, but the other sacks were not emptied, the seed remaining in the bags in which it was delivered. The threshers who threshed the clover seed testified that in their opinion the seed was good seed. That it was threshed with a Monitor Junior Birdsall Clover Huller, which was a good machine and did its work well:

" If anybody is acquainted with the Birdsall huller they know it does its work well, and when it is done the seed is in the bag ready for the market, and we never have any trouble with our seed going to market.

" Q. And the foul stuff is out?

" A. Yes, sir.

" Q. And there is only one sack at a time ?

" A. Yes, sir.

" Q. When you take one off you put on another ?

" A. Yes, sir.

" Q. So there is no reason to be any difference in the top or the bottom of the sack or the middle ?

" A. None whatever."

That at the time of the examination, they examined some of the seed returned from Chicago and claimed to be the seed sold by Phiscator to Rice, and that that seed did not look like the seed they had threshed for Phiscator; Christian Fletcher testifying that " Phiscator's seed was mostly blue black seed, and this was white seed mostly. Very few kernels of blue black seed in it, that is the difference." Will Fletcher testified that there was more foul stuff in it than in the seed they hulled for Phiscator, and that it was a different color seed :

" Q. How many different colors of clover seed have you knowledge of ?

" A. Colors, you understand, a very little variation, you would say a change in color. * * * Three different colors, that is when you talk about colors.

" Q. What are these three colors that are distinct ?

"*A.* Yellow, a light yellow; a deep blue; a kind of light blue. If you have ever been to the seed markets, you have investigated yourself, as near as I can explain."

Another witness testified that he helped Phiscator carry in the seed at Rice Bros.' store, and that there were five bags of the seed instead of four, as testified to by defendant. The plaintiff testified that, having received a letter calling his attention to the return of the seed, and its not complying with the sample, he went to Rice Bros.' store and was shown samples taken from different portions of the bags by Nelson Rice, a brother of defendant, which had buckthorn in it, and that he informed the said Nelson Rice that the seed exhibited to him was not his seed.

While the testimony on the part of plaintiff may not be very convincing, we cannot say, as a matter of law, that it presented no issue as to the identity of the seed. This seed had been in the possession of the defendant and his brother from the 15th of December until some time in January. The threshers' testimony indicated that the bags were filled by the machine, and, unless the bags were tampered with by Phiscator after they came from the machine, it is highly improbable that four of the bags should have had clean, merchantable seed on top and a large percentage of buckthorn, or foul seed, upon the bottom. In the language of defendant's brief:

"It was in such shape as to impress every person that it would not be so placed fortuitously; that it was there by the design and act of some one."

Furthermore, according to the test made in the presence of the jury by defendant's witness, Heffron, in one of the bags "there was a large quantity (of buckthorn) at the top and all through it." Phiscator having testified positively that he had not tampered with the seed or changed it in any way from what it was when the bags were delivered to him, and the threshers having testified that clover seed was of different colors, and that the seed produced by the defendant was of a different color from the seed which they had threshed for Phiscator, and, in

their opinion, was not his seed, and the test made by the expert in the presence of the jury disagreeing with the result of the test made by defendant after the return of the seed and being inconsistent therewith, we think it should have been left to the jury to determine whether the seed produced by the defendant in court was the same seed which plaintiff had delivered to defendant on the 15th of December, 1904. It is clear that if the jury should find that this was not the seed delivered by plaintiff, such finding might be based upon the conclusion that the defendant had himself changed the seed, a conclusion which would negative defendant's claim of a frank, full, and fair statement of the case to counsel as well as a claim of probable cause. As we are of the opinion that a question of fact was presented for the jury, it becomes unnecessary to examine the authorities cited by counsel or to consider other questions which will probably not arise upon another trial.

The judgment is reversed, and a new trial granted.

McALVAY, C. J., and CARPENTER, GRANT, and MONTGOMERY, JJ., concurred.